IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARLO CLARK | : | CIVIL ACTION |
| [CG-7677] | : | |
| | : | |
| v. | : | |
| | : | |
| EDWARD KLEM, et al. | : | NO. 02-2850 |

## REPORT AND RECOMMENDATION

M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE                     September 22, 2003

Presently before this Court is a counseled Petition for Writ of Habeas Corpus filed, pursuant to 28 U.S.C. §2254, by a state prisoner. Petitioner is currently incarcerated at State Correctional Institution ["SCI"] Retreat in Hunlock Creek, Pennsylvania, where he is serving a life sentence for second degree murder, robbery and related offenses. For the reasons which follow, it is recommended that the Petition for Writ of Habeas Corpus be denied and dismissed without an evidentiary hearing.

### BACKGROUND[1]

On February 15, 1994, following a jury trial before the Honorable James A. Lineberger of the Philadelphia County Court of Common Pleas, Petitioner was convicted of second degree murder, robbery, criminal conspiracy, possession of an instrument of crime ["PIC"], and carrying

---

[1] The facts in this discussion have been taken from Mr. Clark's habeas petition and memorandum of law in support, the Commonwealth's response, and the state court records.

a firearm on a public street or property.  *See* Respondents' Response To Petition For Writ Of Habeas Corpus [Docket Entry No. 13][2]: Exhibit "A" (March 13, 1995 trial court opinion) at p. 1.

The facts underlying Petitioner's convictions were described by the Superior Court as follows:

> "Appellant's [Petitioner's] involvement in the April 11, 1992, robbery and shooting death of Lindsey Works was primarily established by the testimony of Khalif Mays, an eyewitness to the entire incident.  Khalif Mays testified that on the night of the incident, he, Appellant, Perry Lighty, and two other individuals (Frank and Chris) traveled together in Lighty's car to a party.  During the ride, Lighty showed Mays a .380 caliber black gun.  Upon arrival, Mays paid a $2 cover charge and entered the party with Frank and Chris.  Appellant and Lighty, however, remained outside.  Approximately ten minutes later, Mays returned and asked Lighty if he was coming in.  Lighty indicated that he was not because he had no money.  Mays offered to pay his way in but Lighty declined the offer.
>
> At this point, a conversation ensued between Appellant and Lighty, Appellant initially stating that he knew someone who had money on Seventh Street.  He then suggested to Lighty that they 'stick him up' but that he knew the intended victim and that Lighty would, therefore, have to commit the crime.  Lighty, according to Mays, then reached into his car and, emerging with his hands in his pockets, told Appellant to come with him.  After briefly conferring again, Lighty and Appellant then walked to Seventh Street.  Mays also proceeded to Seventh Street.
>
> Mays testified that he saw Appellant walk down Seventh Street past the intended victim, Lindsey Works, who was seated in a Chevette.  Shortly afterwards, Lighty approached Works and knocked on the car window.  Works got out of the car and began to speak to Lighty.  Lighty then put his arm around Works but Works managed to break away and started to run.  Lighty, however, pulled his gun and fired a fatal shot at his fleeing victim.  Lighty then returned to Works' car and drove it backwards north on Seventh Street.  Mays returned to the party and did not see Appellant again." *Id.*: Exhibit "B" (December 14, 1995 Superior Court Opinion) at pp. 1-2.

---

[2]  Hereinafter the "Commonwealth's Answer."

Immediately after the verdict was rendered, Judge Lineberger imposed the mandatory life sentence for the murder. On April 20, 1994, Petitioner was sentenced to an additional five to ten years incarceration for robbery, and one to two years for criminal conspiracy.[3] *See* Commonwealth's Answer: Exhibit "A" (March 13, 1995 Trial Court Opinion) at pp. 1-2.

Petitioner filed a timely direct appeal. On appeal, he raised the following issues:

(1) The evidence was insufficient to prove criminal conspiracy.
(2) The evidence was insufficient to prove that Petitioner was an accomplice to the co-defendant (Perry Lighty).
(3) The court committed reversible error by giving the jury instruction on accomplice liability when the evidence was insufficient to support the concept of accomplice and insufficient to justify the giving of the instruction.
(4) Assuming *arguendo* that the evidence was sufficient to establish criminal conspiracy, Petitioner contends that the evidence also established that he withdrew from the conspiracy and therefore was not responsible for the homicide either as a conspirator or as an accomplice.
(5) A new trial should be granted because of numerous acts of prosecutorial misconduct committed during the prosecutor's summation to the jury. *See* State Court Records: "Statement Of Matters Complained Of On Appeal" (marked #11).

The Pennsylvania Superior Court affirmed the judgments of conviction, rejecting all claims as meritless and/or waived. *See* Commonwealth's Answer: Exhibit "B" (December 14, 1995 Superior Court Opinion) at pp. 3-13.

Mr. Clark sought discretionary review in the Pennsylvania Supreme Court. *Allocatur* was denied on August 9, 1996. *See* State Court Record: Docket Entries at 8-9-96.

On June 4, 1997, Petitioner filed a timely petition for relief under the Post Conviction Relief Act [PCRA], 42 Pa.C.S.A. 9541, *et seq.* Counsel was appointed to represent Petitioner; he filed an amended PCRA petition on November 5, 1998. In his amended PCRA petition, Mr. Clark asserted ineffective assistance of counsel claims for failing to file and litigate a

---

[3] The additional sentences are concurrent, and consecutive to Petitioner's life sentence.

decertification petition, and for failing to present character witnesses to testify to Petitioner's peaceful, nonviolent nature. *See* Commonwealth's Answer: Exhibit "C" (July 23, 1999 PCRA Court Opinion) at pp. 2-4.

After hearing argument on March 30, 1999, the PCRA Court dismissed Mr. Clark's petition, concluding that the issues raised were meritless. *Id.* at p. 1.

Petitioner filed an appeal from the dismissal of his PCRA petition. On appeal, he argued that: (1) trial counsel was ineffective for failing to call character witnesses; (2) trial counsel was ineffective for failing to investigate, interview, or call Frank Thompson as a witness; and (3) Petitioner was entitled to a new trial based upon after-discovered evidence of proposed witness Frank Thompson. *See* Commonwealth's Answer: Exhibit "D" (December 20, 2000 Superior Court Opinion) at p. 4.

The Superior Court affirmed the PCRA Court, rejecting all claims on the merits. *Id.*

Mr. Clark filed a petition for allowance of appeal to the Supreme Court of Pennsylvania. *Allocatur* was denied on December 11, 2001. *See* State Court Record: Docket Entries at 12-11-01.

On May 13, 2002, Counsel, on behalf of Petitioner, filed the instant habeas petition. *See* Habeas Petition [Docket Entry No. 1]. As grounds for habeas relief, Petitioner raises the following issues:

> 1. "Trial counsel was ineffective because he failed to call any character witnesses on behalf of Petitioner. Although Petitioner had a minor criminal record he did have good character and several character witnesses signed affidavits so attesting and they would have been available to testify at trial. Trial counsel could have avoided any cross-examination as to Petitioner's past two convictions by

presenting character testimony limited to certain traits - i.e. being peaceful and nonviolent- traits not contradicted by Petitioner's convictions for receiving stolen property and drugs."

2. "Trial counsel was ineffective for failing to object to the proof of the crime of conspiracy by use of Petitioner's statements to Mays without jury instructions on Pennsylvania's corpus delicti rule. Pennsylvania law prohibits proof of the commission of a crime out of the mouth of the defendant and requires a jury to first find, beyond a reasonable doubt, that the crime occurred. Here, the only proof of conspiracy that could measure up to proof beyond a reasonable doubt was the Petitioner's statements to Mays. Pennsylvania law requires that the jury first find the crime occurred beyond a reasonable doubt without using the defendant's statement or statements."

3. "Trial counsel was ineffective for failing to invoke the corpus delicti rule at trial as to the crime of conspiracy because it would have negated one theory on which to hold Petitioner liable for the murder."

4. "Trial counsel was ineffective for failing to object to the Court's instructions that imposed a conclusive presumption as to malice as to second degree murder in violation of *Sandstrom v. Montana*, 442 U.S. 510 (1979). The Court charged, without objection, that malice would be presumed in the second degree murder context. Conclusive presumptions violate *Sandstrom*."

5. "Trial counsel was ineffective for failing to interview Frank Thompson who could have and would have provided exculpatory testimony for Petitioner. Frank Thompson was present prior to the robbery according to the discovery materials. In his sworn affidavit taken after trial he declared that police forced him to make a signed statement and then testify falsely at a preliminary hearing and that the truth was that Petitioner was not present prior to the robbery and had nothing to do with the robbery that led to the killing of Lindsey Works."

6. "Habeas Claims II, III, IV, and VII were not raised in the state courts. Cause and prejudice exist for their consideration by this Court."

7. "Trial counsel was ineffective for failing to object to the Court's charge that failed to instruct the jury that it could and should consider May's criminal convictions as weighing against his credibility." *See* Habeas Petition and Memorandum of Law in Support of Habeas Petition[4] [Docket Entry No. 1] at pp. 9-11, and 2-13, respectively.

---

[4]   Hereinafter "Habeas Memorandum."

The Respondents have filed an answer to Mr. Clark's habeas petition, arguing that his claims are procedurally defaulted and/or meritless. *See* Commonwealth's Answer at p. 5.

## DISCUSSION

**I. Timeliness.**

The Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA" or the "Act"], signed into law on April 24, 1996, significantly amended the laws governing habeas corpus petitions.

One of the amended provisions, 28 U.S.C. §2244(d), imposes a one-year statute of limitations on state prisoners who seek federal habeas relief. A habeas petition must be filed within one year from the date on which the petitioner's judgment of conviction becomes final. *See* 28 U.S.C. §2244(d)(1).[5]

In the instant case, Mr. Clark's state conviction became final on November 8, 1996, when the time for seeking *certiorari* review in the United States Supreme Court (90 days) expired. *See Kapral v. United States,* 166 F.3d 565, 575 (3d Cir. 1999)("Therefore, a state court criminal judgment is 'final' (for purposes of collateral attack) at the conclusion of review in the United

---

[5] While the date on which the petitioner's conviction becomes final is typically the start date for the limitations period, the statute permits the limitation period to run from four different points in time, depending on which occurs latest. In addition to the date on which the petitioner's conviction becomes final, the start date can also run from: (1) "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action"; (2) "the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; or (3) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

There is nothing in the pleadings before me to suggest that the start date for the statute of limitations period should be permitted to run from a point later in time than the date on which Mr. Clark's conviction became final.

States Supreme Court or when the time for seeking certiorari review expires."). Petitioner's one year statute of limitations began to run on November 9, 1996 and continued to run until June 4, 1997, when Petitioner filed a timely PCRA petition[6]. The remainder of Petitioner's one year habeas statute of limitations (approximately 5 months) was tolled while his state collateral attack in the PCRA forum was pending from June 4, 1997 through December 11, 2001. The present habeas petition, filed prior to the expiration of the one year statute of limitations (on or about May 17, 2002), is timely under §2244(d)(1).

**II. Exhaustion/Procedural Default.**

    *A. Standards.*

The exhaustion rule, codified in 28 U.S.C. §2254[7], requires a federal court to postpone habeas corpus jurisdiction, absent exceptional circumstances, until "the applicant has exhausted

---

[6]    As of June 4, 1997, 206 days of Petitioner's one year statute of limitations had expired.

[7]    The exhaustion requirements of 28 U.S.C. §2254 provide:

> (b) (1) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>> (B)(I) there is an absence of available State corrective process; or
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
>  (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
>  (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

the remedies available in the courts of the State."  The exhaustion requirement is rooted in considerations of comity; the statute is designed to protect the role of the state court in enforcement of federal law and to prevent disruption of state judicial proceedings.  *Rose v. Lundy*, 102 S.Ct. 1198, 1203 (1982); *Castille v. Peoples*, 489 U.S. 346, 349 (1989).

In order to demonstrate compliance with the exhaustion requirement, a habeas petitioner must show that each claim which forms the basis of his federal habeas petition has been "fairly presented" to the State courts.  *Castille v. Peoples*, 489 U.S. at p. 351 (1989); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Absent exceptional circumstances, Petitioner must first present all of his constitutional claims in the state system, through the highest state tribunal, before seeking relief in federal court.  *See Picard v. Connor*, 404 U.S. at p. 275 (1971); *Swanger v. Zimmerman*, 750 F.2d 291 (3d Cir. 1984).

An unexhausted habeas claim becomes procedurally defaulted when the petitioner has no additional state remedies available to pursue the issue.  *See Wenger v. Frank*, 266 F.3d 218, 223-24 (3d Cir. 2001)(when a claim has not been fairly presented to the state courts, but further state-court review is clearly foreclosed under state law, the claim is procedurally defaulted and may be entertained in a federal habeas petition only if there is a basis for excusing the procedural default), *cert. denied,* 122 S.Ct. 1364 (2002).

Procedural default also occurs when an issue is properly asserted in the state system, but is not addressed on the merits because of an independent and adequate state procedural rule.  *See Sistrunk v. Vaughn*, 96 F.3d 666, 673 (1996); and *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir.1999)("If the final state court presented with a federal claim refuses to decide its merits based

on an established state rule of law independent of the federal claim and adequate to support the refusal, federal habeas review is foreclosed unless there is cause and prejudice or a showing of innocence.").

Procedural default may be excused if the habeas petitioner can show "cause" for the default and "prejudice attributable thereto," or demonstrate that the failure to consider his habeas claim will result in a "fundamental miscarriage of justice." *Wenger,* 266 F.3d at p. 224 (3d Cir. 2001). *See also McCandless,* 172 F.3d at 260 (3d Cir.1999).

### B. Habeas Claim Number Six Is Not A Separate Claim.

In his sixth habeas argument, Petitioner asserts that habeas claims two, three, four and seven, which were not presented in the state system, should be considered because there is cause and prejudice to excuse any procedural default. This argument does not set forth an independent habeas issue and, therefore, will not be addressed as a distinct habeas claim.

### C. Habeas Claims Two, Three, Four and Seven Are Procedurally Defaulted.

As Petitioner notes, four of his habeas claims were not presented in the state system. He argues that these four claims are subject to habeas review, despite the procedural default, because cause and prejudice exists. According to Petitioner:

> "The defaults occurred at trial and trial counsel was counsel on direct appeal. This presents the court with an ineffective assistance of counsel situation where Petitioner was constitutionally entitled to the effective assistance of counsel. This is more than sufficient to establish the cause and prejudice to overcome the procedural default where it is clear that Petitioner would have been acquitted of the charge of conspiracy but for the ineffectiveness of counsel. [citations omitted]
> It is also clear that as to the use of the conclusive presumption, great prejudice arose to Petitioner since his jury relied on the presumption which was a directed verdict in favor of the Commonwealth. Courts may not direct verdicts - either complete ones or as to elements of the crime charged under *Sandstrom* and

>  long established case law which was on the books long prior to *Sandstrom*.
>  [citations omitted]
>
>  The same applies to the court's instructions that failed to inform the jury that it could weigh May's criminal convictions against his credibility. Failure to object to this omission on trial counsel's part was ineffectiveness. By sitting idly by, trial counsel allowed Mays' testimony - the only testimony against Petitioner - to go to the jury carrying far more weight than the law allowed it." *See* Habeas Memorandum at pp. 11-12.

Under the "cause and prejudice" exception to the procedural default rule, the Supreme Court has defined "cause" as "some objective factor external to the defense [which] impeded counsel's efforts to comply with the state's procedural rule." *Wertz v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000)(*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)), *cert. denied*, 121 S.Ct. 1621 (2001). *See Lines v. Larkin*, 208 F.3d 153, 166-67 (3d Cir. 2000), *cert. denied*, 121 S.Ct. 785 (2001).

While ineffective assistance of counsel can be cause for a procedural default, the attorney's ineffectiveness must rise to the level of a Sixth Amendment violation. *See Murray*, 477 U.S. 477 U.S. 478, 488, 106 S.Ct. 2639 (1986).

A claim of ineffective assistance of counsel must be specifically raised in the state courts before it can be used to establish cause for a procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000)(*quoting Carrier*, 477 U.S. at 489, for the proposition that a claim of ineffective assistance of counsel must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default).

In the instant case, Mr. Clark did not raise any claim of ineffective assistance of appellate counsel in his PCRA petition. Therefore, this ineffective assistance of counsel claim remains unexhausted and cannot be used to establish cause for the procedural default of four of his habeas

claims.

Because Petitioner has not established cause and prejudice to excuse the procedural default of habeas claims two, three, four and seven, these claims are not subject to review in this forum.

*D. Habeas Claims One and Five Are Exhausted.*

Petitioner's two remaining habeas claims were presented in the PCRA forum, from the initial level through the filing of an *allocatur* petition to the Pennsylvania Supreme Court. Both are properly exhausted and may be reviewed by this Court. I will address each on the merits.

### III. Merits.

*A. Habeas Standards of Review.*

Because Mr. Clark's habeas petition was filed after the effective date of AEDPA[8], the amended habeas standards apply to his habeas claims.

AEDPA precludes habeas relief on "any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(Supp. 1998).

In interpreting the above language, the Third Circuit has discussed the appropriate degree of deference which AEDPA requires a federal habeas court to accord a state court's construction of federal constitutional issues and interpretation of Supreme Court precedent. *See Matteo v.*

---

[8] Pub.L. No. 104-132, 110 Stat. 1214, 1219 (1996), effective date April 24, 1996.

*Superintendent, SCI Albion*, 171 F.3d 877 (3d Cir.), *cert. denied*, 120 S.Ct. 73 (1999). The Third Circuit has held that under 28 U.S.C. §2254(d)(1), a two step inquiry is warranted. The majority agreed that:

> (1) The proper initial inquiry for the habeas court is whether the state court decision was "contrary to" Supreme Court precedent that governs the petitioner's claim. Relief is appropriate only when the petitioner shows that "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." *Id.* at 891 (3d Cir. 1999).
>
> (2) In the absence of such a showing, the habeas court must then ask whether the state court decision represents an "unreasonable application of" Supreme Court precedent. This inquiry is an objective one, namely, "whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified." *Matteo*, 171 F.3d at 891 (3d Cir. 1999).

The United States Supreme Court has set forth the scope of habeas review after AEDPA. *See Williams v. Taylor*, 120 S.Ct. 1495, 529 U.S. 362 (2000). According to the *Williams* majority:

> "We [the Supreme Court Justices] all agree that state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated. [. . . ] In sum, the [AEDPA] statute directs federal courts to attend every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law. If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody– or, as in this case, his sentence of death– violates the Constitution, that independent judgment should prevail." *Williams*, 120 S.Ct. at 1511 (2000).

Under AEDPA, a federal reviewing court must presume that factual findings of state trial and appellate courts are correct. The presumption of correctness may only be overcome on the basis of clear and convincing evidence to the contrary. *See Stevens v. Delaware Correctional Center, et al.,* 295 F.3d 361, 368 (3d Cir. 2002).

     *B.  Ineffective Assistance of Counsel Standard.*

     In order for a petitioner to establish ineffective assistance of counsel under the federal *Strickland* standard, he must show: [1] that counsel's performance was "deficient" and [2] that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

     To demonstrate that counsel's performance was deficient, the petitioner must show that counsel's representation fell below an objective standard of reasonableness based on the facts of the particular case, viewed as of the time of counsel's conduct.  *Senk v. Zimmerman*, 886 F.2d 611, 615 (3d Cir. 1989)(*quoting Strickland*, 466 U.S. at 688, 690(1984)), *cert. denied*, 493 U.S. 1035 (1990).

     To establish prejudice, the petitioner must demonstrate a reasonable probability that, but for unprofessional errors, the result would have been different.  This standard is less strict than the "more likely than not" standard.  *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992), *cert. denied*, 507 U.S. 954 (1993).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 358 (*quoting*, *Strickland*, 466 U.S. at 694).

     Because the United States Supreme Court has identified a rule which governs Petitioner's ineffective assistance of counsel claims, the *Strickland* standard "shape[s] the contours of an appropriate analysis of a claim of constitutional error to merit review of a state court's decision under section 2254(d)(1)'s 'contrary to' prong."  *Matteo*, 171 F.3d at 886 (3d Cir. 1999).

> *C. The Superior Court's Rejection of Petitioner's First Habeas Claim Is Neither Contrary To, Nor An Unreasonable Application Of, Federal Law.*

In his first habeas claim, Petitioner argues that trial counsel was ineffective for failing to call five character witnesses: Ms. Debra Crawley, Mrs. Kim Byrd, Mr. James Jett, Mrs. Bernadett Ryan, and Mrs. Hazel Pierce.

On PCRA appeal, the Superior Court of Pennsylvania analyzed both of Petitioner's ineffective assistance of counsel claims, applying the Pennsylvania standard. Under state law, in order to establish ineffective assistance of counsel, a petitioner was required to prove that: (1) his claim of ineffectiveness has merit; (2) counsel's performance had no reasonable strategic basis, and (3) that there is a reasonable probability, that, but for the error of counsel, the outcome of the proceeding would have been different. *See* Commonwealth's Answer: Exhibit "D" (December 20, 2000 Superior Court Opinion) at pp. 5-6. The Third Circuit has determined that the Pennsylvania ineffective assistance of counsel standard does not contradict the federal *Strickland* standard. *See Werts v. Vaughn*, 228 F.3d at 204 (3d Cir. 2000).

With regard to the alleged failure of trial counsel to call five character witnesses, the Superior Court stated that in order to show ineffective assistance of counsel, a petitioner must establish: (1) the identity and existence of the witnesses; (2) that his counsel was informed of the existence of the witnesses or should have known of them prior to trial; (3) that the witnesses were prepared to cooperate and would have testified on the petitioner's behalf; and (4) that the absence of the witnesses' testimony prejudiced the petitioner so as to deny him a fair trial. The Court held that Mr. Clark's claim could not succeed because he failed to allege that trial counsel was aware, or should have been aware, of the proposed character witnesses. *See* Commonwealth's Answer: Exhibit "D" (December 20, 2000 Superior Court Opinion) at p. 5.

Petitioner has not argued that the Superior Court's factual finding, that he failed to allege that trial counsel was (or should have been) aware of the five proposed character witnesses, is incorrect. Absent clear and convincing evidence to the contrary, this finding is presumptively correct and must be accepted by this Court. *See* 28 U.S.C. §2254(e)(1).

Since Petitioner has not established that trial counsel was informed of the existence of the five proposed character witnesses prior to trial, counsel's failure to call these witnesses did not fall below an objective standard of reasonableness. Petitioner's bare assertion that "[t]his was a case that depended entirely on the credibility of a very disreputable individual (Mays) and the circumstantial evidence which good character provides would have altered the outcome," is insufficient to support a claim of ineffective assistance of counsel. Consequently, the Superior Court's rejection of Petitioner's first ineffective assistance of counsel claim is not an unreasonable application of clearly established federal law. *See Young v. Vaughn*, C.A. No. 00-3512, 2002 WL 393106 at *8 (E.D. Pa. March 6, 2002)(*citing Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991), for the proposition that vague and conclusory allegations that some unspecified and speculative testimony might have established the petitioner's defense do not meet the petitioner's burden of proof). Under AEDPA, this court must, therefore, defer to the state court's decision.

> *D. The Superior Court's Rejection of Petitioner's Fifth Habeas Claim Is Neither Contrary To, Nor An Unreasonable Application Of, Federal Law.*

In his fifth habeas claim, Petitioner argues that "the ineptitude of trial counsel" prevented him from investigating and interviewing Frank Thompson, who could have provided exculpatory information. According to Petitioner:

> "Frank Thompson, a/k/a Frank Nitty, was 14 at the time of the instant slaying and when he was arrested by police on an unrelated charge and taken to

the homicide division.  According to his affidavit signed long after Petitioner's trial,

> while in the homicide division he was made aware of what police believed had occurred prior to the shooting death of Lindsey Works - repeatedly.
> He finally told police what they had told him - and he now surmises that the information the police had came from Khalif Mays.  Thompson gave police a signed statement, and later testified at a preliminary hearing in accordance with his signed statement.
> His affidavit makes it clear that he was 'used' by police when he incriminated Petitioner in both his signed statement and in his preliminary hearing testimony.  A copy of his affidavit so stating is attached as Exhibit 'A.'
> Had he testified at trial, the testimony given by Mays would have been undermined.  Thompson's testimony in conjunction with character testimony would have easily led to a different result." *See* Habeas Memorandum at pp. 9-10.[9]

The Superior Court, in addressing this issue, described Thompson's affidavit as follows:

> "In that affidavit, Thompson stated that he was with Lighty, Khalif Mays and another man known as Chris on the night of the murder.  Affidavit, 6/5/00 at 1.  Thompson indicated that Clark 'was not there,' and that Lighty shot the victim, Lindsey Works.  *Id.* at 3.
> Thompson failed to state in his affidavit that he was prepared to cooperate or that he would have testified on Clark's behalf at trial; nor did Thompson indicate that he is now prepared to cooperate and testify on Clark's behalf." *See* Commonwealth's Answer: Exhibit "D" (December 20, 2000 Superior Court Opinion) at pp. 6-7.

Based upon its finding that Thompson's affidavit did not state an intent to cooperate or testify on Petitioner's behalf, the Superior Court concluded that Petitioner had not set forth a sufficient claim of ineffective assistance of counsel for failure to call Thompson as a witness.

The Superior Court further held:

"In addition, Thompson had previously testified at the preliminary hearing that while he (Thompson), Clark, Lighty, and a man named Chris were riding in Lighty's car on the date of the robbery/murder, Clark said to Lighty, 'Let's stick

---

[9] While Petitioner states that Thompson's affidavit is attached to his habeas petition, it is not.  However, the Thompson affidavit is attached to the Commonwealth's Answer at part of Exhibit "E."

someone up.' Clark specified Lindsey Works as the intended victim, and pointed him out to Lighty while the victim was seated in his parked car. Thompson indicated that Lighty, Clark, and the others then got out of Lighty's car, Lighty approached the victim, and began talking to him. Then, the victim got out of the car, Lighty pulled out a gun, and Thompson heard a gun shot. Thompson indicated that Clark was present at that time. *See* N.T. 3/11/93, at 2-12, 29. If Thompson had been called as a witness for Clark at trial, he could have been extensively cross-examined with his prior testimony. Therefore, counsel would have had a reasonable basis for failing to call Thompson as a witness." *Id* at p. 7.

In the absence of any evidence, or argument to the contrary, the Superior Court's factual finding that Frank Thompson did not state any intent to cooperate with, and/or testify for, Petitioner, must be accepted as presumptively correct.

The Superior Court's determination, based upon this factual finding, that Petitioner did not set forth a sufficient claim of ineffective assistance of counsel for failing to call Thompson is neither contrary to, nor an unreasonable application of, *Strickland*. Since Petitioner has not established that Mr. Thompson was willing to cooperate, counsel's failure to call this witness did not fall below an objective standard of reasonableness. Moreover, the Superior Court's conclusion that Mr. Thompson's prior testimony would have led to extensive cross-examination of him at trial, and therefore, would have provided counsel with a reasonable basis for failure to call him, is supported by the record and is objectively reasonable. The Superior Court's rejection of this ineffective assistance of counsel claim must be upheld.

**RECOMMENDATION**

Consistent with the above discussion, it is recommended that Petitioner's habeas petition, filed under 28 U.S.C. §2254, be DENIED AND DISMISSED WITHOUT AN EVIDENTIARY HEARING. It is further recommended a finding be made that there is no probable cause to issue a certificate of appealability.

BY THE COURT:

_____
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE