IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARLO CLARK : 
 :
 : CIVIL
v. : NO. 02-2850
EDWARD KLEM, et al. :
 :
 :
 :

**Memorandum and Order**

YOHN, J.                                             March____, 2004

Presently before this court is Marlo Clark's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. United States Magistrate Judge M. Faith Angell filed a Report and Recommendation ("Report & Recommendation") recommending denial of the petition. Petitioner filed objections to the Report & Recommendation ("Objections"). For the following reasons, petitioner's objections will be overruled, this court will adopt the Report and Recommendation, and the petition will be denied.

**I. BACKGROUND**[1]

On February 15, 1994, following a jury trial in the Philadelphia County Court of Common Pleas before the Honorable James A. Lineberger, petitioner Marlo Clark was convicted

---

[1] The facts set forth in this section have been taken from the state court records. *See* Trial Court Opinion, March 13, 1995; Superior Court Opinion, Dec. 14, 1995; PCRA Opinion, July 23, 1999; Superior Court PCRA Opinion, Dec. 20, 2000. Citations to the state records can be found in the Report & Recommendation, Doc. #15, as well as in the Commonwealth's Response to Petition for Writ of Habeas Corpus, Doc. #13. Each of the aforementioned opinions is attached to the Commonwealth's Response and cited extensively in the Report & Recommendation, thus rendering the repetition of these lengthy citations unnecessary.

of second-degree murder, robbery, criminal conspiracy, possession of an instrument of crime, and carrying a firearm on a public street.[2] Clark was sentenced to life imprisonment. On April 20, 1994, he was sentenced to an additional five to ten years for robbery, and an additional one to two years for criminal conspiracy, to run concurrently with each other and consecutive to petitioner's life sentence. Petitioner filed a timely direct appeal, in which he raised five grounds for finding error at trial. The Superior Court affirmed the judgments of conviction, and the Pennsylvania Supreme Court denied *allocatur* review.

On June 4, 1997, petitioner filed a timely petition for relief under the Post Conviction Relief Act ("PCRA"), *see* 42 Pa. C.S.A. 9541, *et seq.*, which was amended on November 5, 1998, in which he asserted claims for ineffective assistance of counsel. In an opinion dated July 23, 1999, petitioner's PCRA petition was dismissed as meritless. The Superior Court affirmed this judgment on December 20, 2000, rejecting each of petitioner's claims as meritless. The Pennsylvania Supreme Court denied *allocatur* on December 11, 2001, and this habeas petition was filed on May 13, 2002, pursuant to 28 U.S.C. § 2254.

Petitioner asserted seven grounds for habeas relief. In his Objections, petitioner conceded that all but two of these claims had not been properly exhausted and therefore were procedurally defaulted. *See* Objections at 2. His two remaining grounds for habeas relief raise the following issues:

> Ground One: Trial counsel was ineffective because he failed to call any character witnesses on behalf of Petitioner. Although Petitioner had a minor criminal record he did have good character and several character witnesses signed affidavits so attesting and they would have been available to testify at trial. Trial counsel could have avoided any

---

[2]The facts underlying petitioner's conviction are set forth in detail in the Superior Court of Pennsylvania's opinion dated December 15, 1995.

cross-examination as to Petitioner's past two convictions by presenting character testimony limited to certain traits– i.e. being peaceful and nonviolent– traits not contradicted by Petitioner's convictions for receiving stolen property and drugs.
<u>Ground Five</u>: Trial counsel was ineffective for failing to interview Frank Thompson who could have and would have provided exculpatory testimony for Petitioner. Frank Thompson was present prior to the robbery according to the discovery materials. In his sworn affidavit taken after trial he declared that police forced him to make a signed statement and then testify falsely at a preliminary hearing and that the truth was that Petitioner was not present prior to the robbery and had nothing to do with the robbery that led to the killing of Lindsey Works.

Pet. Habeas Corpus at 9-10.

## II. STANDARD OF REVIEW

Where a habeas petition has been referred to a Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), this court's review of "those portions of the report or specified proposed findings or recommendations to which objection is made" is *de novo*. *Id.* at § 636(b).

## III. AEDPA STANDARDS

Section 2254 allows federal courts to grant habeas corpus relief to a prisoner "in custody pursuant to the judgment of a State court" where his custody violates the Constitution of the United States of America. 28 U.S.C. § 2254(a). Because Clark's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996[3] ("AEDPA"), P.L. 104-132, 110 Stat. 1214, he is entitled to habeas relief only where the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1).

---

[3] The AEDPA governs §2254 habeas petitions filed on or after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997).

A state court decision may be "contrary to" clearly established federal law in one of two ways. First, a state court decision is contrary to clearly established precedent where "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Second, a state court decision will be "contrary to" the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the] precedent." *Id.* at 406. A state court decision involves an "unreasonable application" of federal law, on the other hand, where it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08.

Habeas relief will also be granted where a state court decision is "based on an unreasonable determination of the facts." Under the AEDPA, however, factual determinations made by the state court are accorded a presumption of correctness: "a federal court must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." *Stevens v. Del. Correctional Ctr.*, 295 F.3d 361, 368 (3d Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)). To prevail under this "unreasonable determination" prong, therefore, petitioner must demonstrate that the state court's determination of the facts was objectively unreasonable in light of the evidence available; mere disagreement with the state court– or even a showing of erroneous factfinding by the state court– will be insufficient to warrant relief, provided that the state court acted reasonably. *See Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. at 409); *Torres v. Prunty*, 223 F.3d 1103, 1007-08 (9th Cir. 2000) (citing same).

4

**IV. TIMELINESS**

Under the AEDPA, a state prisoner seeking federal habeas relief must file his habeas petition within one year of the date on which his judgment of conviction becomes final. 28 U.S.C. § 2244(d)(1). Because petitioner's habeas petition was filed prior to the expiration of the one year statute of limitations,[4] it is timely under §2244(d)(1).

**V. LEGAL STANDARD**

Petitioner objects to the Report & Recommendation with respect to two findings, each of which arises from a determination as to the effectiveness of petitioner's attorney. These two claims have been exhausted and are properly before this court.[5] The applicable federal precedent, then, is the well-settled two-prong test established by the Supreme Court in *Strickland v.*

---

[4]Petitioner's conviction became final on November 8, 1996, upon expiration of his time to seek direct review in the United States Supreme Court by writ of *certiorari* (90 days). *See Kapral v. United States*, 166 F.3d 565, 575 (3d Cir. 1999). The one year statute of limitations began to run on November 9, 1996, and continued running until petitioner filed his PCRA petition on June 4, 1997, at which time 206 days had elapsed. Petitioner's statute of limitations was then tolled until December 11, 2001, during the pendency of his state collateral attack. *See* 28 U.S.C. § 2244(d)(2). Between December 12, 2001, and May 13, 2002, when petitioner filed this habeas petition, approximately 152 days elapsed. The instant habeas petition is, therefore, timely under the AEDPA's one-year statute of limitations.

[5]Section 2254 prohibits a federal court from reviewing a habeas petition unless all state court remedies have been exhausted. 28 U.S.C. § 2254(b)(1)(A). Petitioner presented the factual and legal substance of claims one and five to the highest available state court when he petitioned the Pennsylvania Supreme Court for *allocatur* review. His state court remedies, therefore, have been exhausted and his claims are properly before this court on habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 846-48 (1999) (holding that the exhaustion requirement requires a petitioner to have sought discretionary review where available); *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982)) (holding that a petitioner "must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted" in order to have "fairly presented" a claim for the purposes of the exhaustion requirement).

*Washington*, 466 U.S. 668 (1984).  Under *Strickland*, in order to merit habeas relief based on a claim of ineffectiveness of counsel petitioner must demonstrate that: (1) his attorney's performance was deficient, and (2) he was prejudiced by this deficiency.  *Strickland*, 466 U.S. at 687.  To demonstrate deficiency, petitioner must establish that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688.  To overcome the presumption that counsel was effective, petitioner bears the burden of establishing that counsel's performance was unreasonable under "prevailing professional norms." *Id.* at 688; *see also Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 689) ("In evaluating counsel's performance, we are 'highly deferential' and 'indulge a strong presumption' that, under the circumstances, counsel's challenged actions 'might be considered sound...strategy.").  To demonstrate prejudice, petitioner must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  Ultimately, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*

## VI. DISCUSSION

### A.  Counsel's Failure to Call Character Witnesses

In his first objection, Clark claims that his trial counsel was constitutionally ineffective for failing to call five witnesses.  Specifically, petitioner claims that these five witnesses could have provided testimony regarding his good character and reputation for being peaceful and nonviolent.  The Superior Court of Pennsylvania reviewed this claim on PCRA appeal and

affirmed the trial court's judgment on the merits.

The relevant "clearly established" federal precedent for an ineffectiveness claim is *Strickland*. The question before this court, therefore, is whether the Superior Court's decision was "contrary to" the *Strickland* standard, involved "an unreasonable application" of *Strickland*, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1).

The Pennsylvania Supreme Court has articulated an ineffective assistance standard, upon which the Superior Court relied in this case, which requires petitioner to demonstrate that (1) the underlying claim is of arguable merit, (2) counsel had no reasonable basis for the act or omission in question, and (3) there exists a reasonable probability that, but for counsel's act or omission, the outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 312, 724 A.2d 326 (1999). Both the Third Circuit and the Pennsylvania Supreme Court have held that this standard is materially identical to that set forth in *Strickland*. *See Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000) (finding that the Pennsylvania standard is "not contrary to" the *Strickland* test); *Commonwealth v. Pierce*, 515 Pa. 153, 161, 527 A.2d 973 (1987) (holding that Pennsylvania's ineffectiveness standard and the *Strickland* test "constitute the same rule"). Given that the Superior Court applied the correct standard, "contrary to" analysis is not appropriate.

Petitioner does not allege that the Pennsylvania courts have made an unreasonable factual determination, nor does he present clear and convincing evidence to support such a claim. Analysis under the "unreasonable factual determination" prong of section 2254(d)(1), therefore,

is also not appropriate. Under the sole remaining prong of section 2254(d)(1)– the "unreasonable application" prong– the relevant inquiry in response to petitioner's first objection is "whether the Pennsylvania courts' application of *Strickland* to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under *Strickland*." *Werts*, 228 F.3d at 204.

On PCRA appeal, the Superior Court required that petitioner set forth the following elements in order to establish ineffective assistance for failure to call a witness:

> (1) the identity and existence of the witness; (2) that counsel was informed of the existence of the witness or should have known of him/her prior to trial; (3) that the witness was prepared to cooperate and would have testified on his behalf; and (4) the absence of the witness's testimony prejudiced the petitioner so as to deny him a fair trial.

Super. Ct. PCRA Op. at 5 (citing *Commonwealth v. Smith*, 544 Pa. 219, 238, 675 A.2d 1221, 1230 (1996)). Having articulated this standard, the court held as follows:

> In the present case, Clark attached the affidavits of the five proposed character witnesses to his PCRA Petition. Clark has not alleged that trial counsel was aware of these witnesses, or that he should have been aware of them. Thus, he failed to satisfy one of the requirements of a claim of ineffectiveness of counsel for failing to call a witness. Accordingly, his claim of ineffectiveness for failing to call five character witnesses cannot succeed. *See Smith*, 544 Pa. at 238.

Super. Ct. PCRA Op. at 5-6. By requiring that petitioner satisfy the four-part requirement of *Smith*, the Superior Court effectively created new requirements under *Strickland*. The question before me, therefore, is whether imposition of these additional requirements amounts to an unreasonable application of the well-settled *Strickland* standard.

Unlike Pennsylvania courts, the federal courts have not articulated any specific paradigm

for evaluating an attorney's failure to call certain witnesses other than the general standard of *Strickland*. *See, e.g., Philson v. Barbo*, 77 Fed. Appx. 123, 127, 2003 WL 22316930 (3d Cir. Oct. 9, 2003) (under "unreasonable determination of the facts" prong of section 2254, the Third Circuit found that counsel's decision not to call two witnesses because of a potential conflict in testimony was "trial strategy," afforded it "appropriate deference," and did not find ineffective assistance of counsel under *Strickland*); *United States v. Archer*, 59 Fed. Appx. 183, 185, 2003 WL 249089 (9th Cir. Feb. 4, 2003) (on appeal from §2255 denial, court applied *Strickland*'s "strong presumption" of competence to trial counsel's decision not to call a specific witness, holding that this strategic decision did not constitute unreasonable professional performance under *Strickland*); *United States v. Dejesus*, 57 Fed. Appx. 474, 478 2003 WL 193736 (2nd Cir. Jan. 28, 2003) (trial counsel's decision not to call a character witness was grounded in a strategy of preventing the prosecution from attacking defendant's character and therefore was "inherently tactical," "generally should not be disturbed," and was not found to be "objectively unreasonable" under *Strickland*); *LaFrank v. Rowley*, 340 F.3d 685 (8th Cir. 2003) (counsel's alleged ineffectiveness for failure to call a witness was evaluated under *Strickland* and, because it was a "matter of trial strategy," found to be reasonable); *Castillo v. Matesanz*, 348 F.3d 1, 15 (1st Cir. 2003) (affirming district court's determination that trial counsel's failure to call two witnesses– whose proposed testimony was merely corroborative and may have contradicted defendant's own testimony– was "a strategic decision which the court will not second guess" and was "well within the wide range of reasonable professional assistance," reasoning that the district court's ruling was "an appropriate application of *Strickland*'s insistence on the 'wide latitude counsel must have in making tactical decisions'") (quoting *Strickland*, 466 U.S. at 689).

Pennsylvania courts applying Pennsylvania law, therefore, will not effect an unreasonable application of federal law so long as that law complies with *Strickland*.

A claim for ineffective assistance of counsel for failure to call a witness is "precisely that type of strategic decision which the court in *Strickland* held to be protected from second-guessing." *Sanders v. Trickey*, 875 F.2d 205, 212 (8th Cir. 1989). Because an attorney's decision to call or not call a witness is strategic decision, a "strong presumption" exists that "counsel's decision not to call [the witnesses] was the result of sound trial strategy." *Reinert v. Larkin*, 211 F. Supp. 2d 589, 599 (E.D. Pa. 2002). Given this highly deferential standard, the Superior Court's enumeration of the specific showings which must be made in order to demonstrate ineffectiveness in this manner does not appear to be an unreasonable application of *Strickland*.

I need not determine whether such analysis does in fact comply with *Strickland*, however, because petitioner is not entitled to relief under *Strickland* itself; petitioner cannot satisfy the first prong of the two-part test.

The record is clear that counsel's decision not to rely upon character evidence at trial was a strategy developed in response to petitioner's criminal history. Counsel stated on the record that he was declining to present character testimony because of petitioner's two juvenile adjudications. *See* Trial Transcript, 2/10/94, at 78 (quoted in Commonwealth's Answer at 16). While the prosecution may not have been able to cross examine petitioner's character witnesses as to these adjudications– drug possession with intent to deliver, and theft by receiving stolen property– the witnesses may well have been cross-examined as to their knowledge of the facts

underlying these events. By opening the door to testimony about petitioner's bad acts in the past, counsel could very well have undermined his own attempt to portray petitioner as an innocent bystander. Counsel understood this possibility, appreciated its potential impact upon petitioner's defense, and formulated an appropriate strategy in response. This strategy is arguably sound, and therefore cannot be held to fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see also Diggs v. Owens*, 833 F.3d 439, 446 (3d Cir. 1987) (finding effective assistance of counsel and, in so finding, holding that trial counsel's decision not to call a given witness was strategically sound despite being based on a potentially erroneous legal assumption).

 Moreover, petitioner's proposed character witnesses have not indicated that they were willing or able to testify as to those good character traits petitioner believes would have been beneficial to his defense. In his 2254 petition, Clark asserts that several witnesses were available to testify as to his good character, specifically with respect to traits of peacefulness and non-violence, which he alleges would have established his good character without opening the door to cross-examination about the facts underlying his juvenile adjudications. *See* 2254 Petition, ¶12(a). The affiants to whom petitioner refers, however, state only that they have personal knowledge "concerning the defendant's good reputation and character as a law-abiding citizen and community orientated [sic] person." Commonwealth's Answer at Ex.E, 2-5. Whether or not petitioner's reputation for being "peaceful" or "nonviolent" would have been admissible– and the subsequent scope of permissible cross examination– is irrelevant, as petitioner has offered no potential witnesses willing to testify to such traits.

 With reference to the testimony the affiants would have provided, petitioner's community involvement is irrelevant to the charges against him and evidence attesting to such involvement

would, therefore, have been inadmissible at trial. His tendency to be "law-abiding," on the other hand, would have– if established– opened the door for the prosecution to cross examine the witnesses regarding their knowledge of the factual events underlying petitioner's juvenile adjudications. As discussed above, such testimony may have hampered counsel's defense strategy.

Because counsel's failure to rely upon character evidence was a strategic decision, petitioner has not established the deficient performance necessary to demonstrate ineffective assistance under *Strickland*. Accordingly, he cannot demonstrate that the Superior Court's application of *Strickland* was objectively unreasonable, and therefore is not entitled to habeas relief on the claim that counsel was ineffective for failing to call character witnesses. Petitioner's first objection will be overruled.

B. Counsel's Failure to Interview Frank Thompson

In his second objection, Clark claims that his trial counsel was constitutionally ineffective for failing to interview a potential witness. Specifically, petitioner claims that Frank Thompson witnessed the murder and could have provided exculpatory testimony had he been interviewed and called to testify. The Superior Court rejected this argument, holding as follows:

> In [Thompson's] affidavit, Thompson stated that he was with Lighty, Khalif Mays and another man known as Chris on the night of the murder. Thompson indicated that Clark "was not there," and that Lighty shot the victim, Lindsey Works.
> Thompson failed to state in his affidavit that he was prepared to cooperate or that he would have testified on Clark's behalf at trial; nor did Thompson indicate that he is now prepared to cooperate and testify on Clark's behalf. Thus, Clark has not set forth a sufficient claim of ineffectiveness of counsel for failure to call Thompson as a witness.
> In addition, Thompson had previously testified at the preliminary hearing that while he (Thompson), Clark, Lighty, and a man named Chris were riding in Lighty's car

> on the date of the robbery/murder, Clark said to Lighty, "Let's stick someone up." Clark specified Lindsey Works as the intended victim, and pointed him out to Lighty while the victim was seated in his parked car. Thompson indicated that Lighty, Clark, and the others then got out of Lighty's car, Lighty approached the victim, and began talking to him. Then, the victim got out of the car, Lighty pulled out a gun, and Thompson heard a gun shot. Thompson indicated that Clark was present at that time. If Thompson had been called as a witness for Clark at trial, he could have been extensively cross-examined with his prior testimony. Therefore, counsel would have had a reasonable bases for failing to call Thompson as a witness.

Super. Ct. Op. 12/20/2000 at 6-7.

The Superior Court's analysis does not constitute an unreasonable application of *Strickland*. To the contrary, the Superior Court correctly pointed to the substantive weaknesses in Thompson's affidavit and wisely identified trial counsel's decision not to call Frank Thompson to the stand as that type of choice grounded in sound trial strategy.

Frank Thompson's affidavit, attached to petitioner's Objections as Exhibit C, was not signed until June 5, 2000. Thompson makes no statement as to what he would have said if called to testify at trial six years earlier, and gives no indication that he would have contradicted his preliminary hearing testimony– as petitioner assumes he would have– had he testified at trial. More importantly, he does not indicate that he is now willing to cooperate on petitioner's behalf. Despite Thompson's revised account of the events in question and accompanying explanation that his preliminary hearing testimony was the result of what he had been told by detectives, his affidavit does not establish that his testimony would have aided petitioner's defense.

Second– and most significant– even assuming that Thompson had been willing to testify and had in fact testified in petitioner's defense, any exculpatory testimony could easily be discredited by the introduction of Thompson's preliminary hearing testimony and by the lack of credibility created by such a change in story. If Thompson had taken the stand and testified that

> on the date of the robbery/murder, Clark said to Lighty, "Let's stick someone up." Clark specified Lindsey Works as the intended victim, and pointed him out to Lighty while the victim was seated in his parked car. Thompson indicated that Lighty, Clark, and the others then got out of Lighty's car, Lighty approached the victim, and began talking to him. Then, the victim got out of the car, Lighty pulled out a gun, and Thompson heard a gun shot. Thompson indicated that Clark was present at that time. If Thompson had been called as a witness for Clark at trial, he could have been extensively cross-examined with his prior testimony. Therefore, counsel would have had a reasonable bases for failing to call Thompson as a witness.

Super. Ct. Op. 12/20/2000 at 6-7.

The Superior Court's analysis does not constitute an unreasonable application of *Strickland*. To the contrary, the Superior Court correctly pointed to the substantive weaknesses in Thompson's affidavit and wisely identified trial counsel's decision not to call Frank Thompson to the stand as that type of choice grounded in sound trial strategy.

Frank Thompson's affidavit, attached to petitioner's Objections as Exhibit C, was not signed until June 5, 2000. Thompson makes no statement as to what he would have said if called to testify at trial six years earlier, and gives no indication that he would have contradicted his preliminary hearing testimony– as petitioner assumes he would have– had he testified at trial. More importantly, he does not indicate that he is now willing to cooperate on petitioner's behalf. Despite Thompson's revised account of the events in question and accompanying explanation that his preliminary hearing testimony was the result of what he had been told by detectives, his affidavit does not establish that his testimony would have aided petitioner's defense.

Second– and most significant– even assuming that Thompson had been willing to testify and had in fact testified in petitioner's defense, any exculpatory testimony could easily be discredited by the introduction of Thompson's preliminary hearing testimony and by the lack of credibility created by such a change in story. If Thompson had taken the stand and testified that

petitioner was not present on the night of the shooting, as his affidavit suggests, his testimony to the contrary from the preliminary hearing would have been introduced not only to impeach him, but also as substantive evidence.[6]

With respect to its impeachment value, Thompson's attempts to justify a dramatic change of testimony at trial would inevitably have given rise to questions as to his credibility. When introduced for its substance, moreover, Thompson's preliminary hearing testimony would have dovetailed with the testimony of Khalif Mays, thus serving to corroborate the testimony of the government's main witness. Counsel's decision not to present such testimony, then– assuming he had investigated and discovered Thompson's existence, as petitioner believes he should have– was clearly not deficient; rather, it was a wise trial strategy and is precisely that type of choice

---

[6]For the rule of law in effect at the time of petitioner's trial in February, 1994, *see Commonwealth v. Lively*, 610 A.2d 7, 10 (Pa. 1992) ("to ensure that only those hearsay declarations that are demonstrably reliable and trustworthy are considered as substantive evidence, we now hold that a prior inconsistent statement may be used as substantive evidence only when the statement is given under oath at a formal legal proceeding; or the statement had been reduced to writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements"). *Lively* was superseded by statute when the Pennsylvania Supreme Court adopted the Pennsylvania Rules of Evidence on May 8, 1998. For the current applicable rule of evidence, *see* Pa. R. Evid. 803.1(1) ("The following statements, as hereinafter defined, are not excluded by the hearsay rule if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement: (1) Inconsistent Statement of Witness."). The Rules go on to define an "inconsistent statement of witness" as "[a] statement by a declarant that is inconsistent with the declarant's testimony, and (a) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b) is a writing signed and adopted by the declarant, or (c) is a verbatim contemporaneous recording of an oral statement." *Id.* For the equivalent federal rule of evidence, *see* Fed. R. Evid. 801(d)(1)(A) (providing that a prior statement by a witness is not hearsay if "the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition").

14

protected by the *Strickland* standard. "Because counsel is afforded a wide range within which to make decisions without fear of judicial second-guessing, we have cautioned that it is 'only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance.'" *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *United States v. Gray,* 878 F.2d 702, 711 (3d Cir.1989)); *see also Carpenter v. Vaughn*, 296 F.3d 138, 154 (3d Cir. 2002) (where defendant's proposed witness had previously offered multiple and inconsistent accounts of the events in question, such that any helpful testimony at trial would have necessarily contradicted other testimony, "it was objectively reasonable for [trial] counsel not to call [the proposed witness]").

Accordingly, the Superior Court of Pennsylvania properly applied federal law; petitioner, therefore, is not entitled to habeas relief on the claim that counsel was ineffective for failing to obtain testimony from Frank Thompson. Petitioner's second objection will be overruled.

**VII. CONCLUSION**

The Pennsylvania state courts considered, and rejected, each of the two grounds contained in petitioner's objections. Petitioner has failed to establish that the state court rulings on these two grounds were contrary to clearly established Supreme Court precedent, that they were unreasonable applications of federal law, or that unreasonable factual determinations were made. Consequently, I will overrule each of petitioner's objections to the Report and Recommendation, adopt the Report and Recommendation in its entirety, and deny the instant petition for habeas corpus. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARLO CLARK | : | |
| | : | |
| | : | CIVIL |
| v. | : | NO. 02-2850 |
| EDWARD KLEM, et al. | : | |
| | : | |
| | : | |
| | : | |

**Order**

And now on this _____ day of March 2004, upon careful and independent consideration of the petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. #1), review of the Report and Recommendation (Doc. #15) of United States Magistrate Judge M. Faith Angell, and petitioner's objections to the Report and Recommendation (Doc. #18), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Petitioner's objections are OVERRULED;

2. The Report and Recommendation of Magistrate Judge M. Faith Angell is APPROVED and ADOPTED as supplemented herein;

3. The petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 is DENIED;

4. The petitioner having failed to make a substantial showing of the denial of a constitutional right, there is no ground to issue a certificate of appealability, *see* 28 U.S.C. § 2253(c); and

5. The Clerk shall CLOSE this case statistically.

_____

William H. Yohn, Jr., J.